IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| OWNERS INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:23-00113-KD-N |
| | ) |
| COSMO'S RESTAURANT & BAR INC., *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATIONS

This action is before the Court[1] on the following matters, each of which has been fully briefed and is ripe for disposition:

(1) Defendant Cosmo's Restaurant & Bar's ("Cosmo's") Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (Docs. 50, 53, 54);

(2) Plaintiff Owners Insurance Company's ("Owners") Fed. R. Civ. P. 12(b)(6) motion to dismiss Cosmo's counterclaims for failure to state a claim upon which relief can be granted (Docs. 31, 34, 35); and,

(3) Owners' motion for sanctions under Fed. R. Civ. P. 11 (Docs. 40, 42).

For the reasons stated herein, the undersigned **RECOMMENDS** that Cosmo's motion to dismiss (Doc. 50) be **GRANTED** and that Owners' complaint (Doc. 1) be **DISMISSED without prejudice** for lack of subject matter jurisdiction; that Cosmo's amended counterclaims (Doc. 24) be **DISMISSED without prejudice** in accordance with the prior recommendation; that Owners' motion to dismiss the amended counterclaims (Doc. 31) be **DENIED as moot**; and that Owners' motion for

---

[1] The District Judge assigned this case has referred this motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72 and S.D. Ala. GenLR 72(a); *See* S.D. Ala. GenLR 72(b) (7/6/2023 elec. ref.).

1

sanctions (Doc. 40) be **DENIED**.

## I.  *Background*

Owners initiated the above-styled action by filing a complaint for declaratory judgment on April 4, 2023, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Fed. R. Civ. P. 57 and 28 U.S.C. § 1332, seeking a judicial determination of Owners' rights and obligations, if any, to defend and/or indemnify Cosmo's under the Tailored Protection Insurance Policy (Policy No. 142317-38058297-21) [2] in connection with a potential claim for bodily injury arising from a March 28, 2022 incident at Cosmo's involving Defendant April Bucki. (Doc. 1). The essential facts underlying the operative motions are largely undisputed.

On March 28, 2022, Bucki allegedly suffered bodily injury resulting from an improperly deboned grouper filet served to her at Cosmo's. (Docs. 1, 24). Cosmo's was insured by the Policy at the time. (Doc. 1-4). Bucki alleged that a small bone became lodged in her throat while eating her grouper, and though she did not notify Cosmo's or its employees of any discomfort at the time, she apparently required surgery the following day to remove the bone. (Docs. 1, 24). On the same day of her surgery, she contacted Cosmo's employee Matt Pugh and requested that Cosmo's reimburse her for health insurance co-pays and deductibles resulting from the surgery. (*Id.*). In speaking with Pugh, Bucki did not threaten to file a claim or otherwise pursue legal action. (*Id.*). Without admitting fault, Pugh agreed to reimburse Bucki for her co-pays and deductibles, "which he anticipated would be less than $1,000," so long as she

---

2 The Tailored Protection Insurance Policy at issue, hereinafter referred to as simply "the Policy," is included alongside Owners' complaint. (Doc. 1-4).

signed a liability release. (*Id.*).³ Pugh emailed Bucki the release "with instructions to fill out the amount to be reimbursed." (Docs. 1, 1-2, 24). Despite receiving the release in late March 2022, Bucki did not complete it until January 25, 2023. (Docs. 1, 1-3, 24). When she did, she executed it for $125,000. (*Id.*). Cosmo's did not learn Bucki had executed the release until February 6, 2023, when it received a demand letter from Bucki's counsel. (*Id.*). Cosmo's did not contact Owners regarding any of these events until February 7, 2023. (Docs. 1, 24). To date, no payment has been made by Cosmo's or Owners to Bucki in connection with the March 28, 2022 incident, and Bucki has not pursued any legal action against Cosmo's beyond the demand letter. (*Id.*). After Owners was notified by Cosmo's of Bucki's release, it sent a reservation of rights letter and initiated this action.

Cosmo's filed is operative first amended answer, also raising affirmative defenses and asserting counterclaims against Owners for breach of contract and bad faith on June 22, 2023. (Doc. 24). Thereafter, Owners filed a motion to dismiss those counterclaims under Fed. R. Civ. P. 12(b)(6) (Doc. 31) and has filed a motion for sanctions under Fed. R. Civ. P. 11. (Doc. 40). At the heart of both motions is Cosmo's contention in its first amended answer and counterclaims that: "Owners Insurance Company manufactured a debatable reason to deny Cosmo's claim for insurance coverage, and then recklessly and prematurely denied said coverage, which breached its contract of insurance with Cosmo's." (Doc. 24, PageID.159). At every step, Owners

---

3 A notarized version of this release, signed by Bucki on January 25, 2023, is included alongside Owners' complaint. (Doc. 1-3). Cosmo's appears to admit in its answer that this release originated from Cosmo's "independent insurance agent," who sent the release to Pugh. (Doc. 24, PageID.152). Pugh subsequently sent this release to Bucki via email. (Docs. 1, 1-2, 24).

3

has insisted that it has not denied Cosmo's claim for coverage. (Docs. 1, 31, 35, 49). In relevant part, Owners' motion for sanctions states:

> For emphasis, Owners did not deny a defense to Cosmo's. Rather it said any defense provided after a complaint is filed will be under a reservation of rights. Cosmo's, however, misrepresented this fact to the Court and, in so doing, obscured the nature of this action. More specifically, its "breach of contract" and "bad faith" claims are apparently premised on Owners' purported denial of the claim, and refusal to provide defense and indemnity. Those false representation are the only thing that render its counterclaim ripe and/or justiciable.

(Doc. 40, PageID.275) (footnote omitted).

With the issue of subject matter jurisdiction over Cosmo's counterclaims having been raised, the undersigned set a hearing on the matter, and the parties came before the Court on November 9, 2023. (Doc. 49). Owners' position at the hearing was that Cosmo's counterclaims were not yet ripe because its claim for coverage had not been denied, while Cosmo's argued that if its counterclaims were not yet ripe, then neither was Owners' complaint. (*See* Doc. 49). Four days after the hearing, Cosmo's moved to dismiss the underlying complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), which has now been fully briefed and is ripe for disposition. (Docs. 50, 52, 53).

## II. *Subject Matter Jurisdiction*

Cosmo's Fed. R. Civ. P. 12(b)(1) motion raises the threshold matter of this Court's subject matter jurisdiction. (Doc. 50). As such, the undersigned begins with the basics: Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to certain justiciable "Cases" and "Controversies," U.S. Const. art. III, § 2, and "if a complaint's factual allegations do not assure the court it

4

has subject matter jurisdiction, then the court is without power to do anything in the case." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). *See City of S. Miami v. Governor of Florida*, 65 F.4th 631, 636 (11th Cir. 2023) ("This Court has 'an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute.'"). *See also, Trump v. United States*, 54 F.4th 689, 697 (11th Cir. 2022) ("Because federal courts lack general jurisdiction, it is presumed that a cause lies outside of our limited jurisdiction. The burden on establishing the contrary rests upon the party asserting jurisdiction.") (cleaned up)).

Owners' action proceeds under the Declaratory Judgment Act ("DJA"), which provides that:

> In a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

In all cases under the DJA, "the threshold question is whether a justiciable controversy exists." *Progressive Mt. Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 733 (11th Cir. 2020) (per curiam) (citation omitted). *See id.* ("Congress limited federal jurisdiction under the [DJA] to actual controversies, in statutory recognition of Article III's constitutional requirements") (citation omitted)). For an actual controversy to exist in the DJA context, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

5

issuance of a declaratory judgment." *Atlanta Gas Light Co. v. Aetna Casualty & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (alteration in original) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). At an "irreducible minimum," the party invoking jurisdiction must demonstrate that, at the time a complaint is filed, "he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (citations omitted). In the context of the DJA, whether a controversy is "actual" or merely conjectural, abstract or hypothetical is frequently a difference in degree. *Maryland Casualty Co.*, 312 U.S. at 273. The DJA, moreover, does not expand the Court's jurisdiction. It is a procedural device "operative only in respect to controversies which are such in the constitutional sense." *GTE Directories Publishing Corp. v. Trimen Am.*, 67 F.3d 1563, 1567 (11th Cir. 1995). Stated simply by a court within this circuit: "for a plaintiff to bring an action for declaratory judgment in federal court, the plaintiff must assert an underlying basis for federal jurisdiction – a federal right or diversity of citizenship – just like it must in any other federal suit." *Heavenly Crown Trust v. US Auto Fin., Inc.*, 2012 U.S. Dist. LEXIS 198972, *5 (N.D. Ga. Feb. 8, 2012) (citations omitted), *report and recommendation adopted*, *Heavenly Crown Trust v. US Auto Fin., Inc.*, 2012 U.S. Dist. LEXIS 198986 (N.D. Ga. Feb. 28, 2012). *See Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003) ("If there is an underlying ground for federal court jurisdiction, the [DJA] allows parties to precipitate suits that otherwise might need to wait for the declaratory relief

defendant to bring a coercive action") (internal quotations omitted)).

Owners' complaint asserts this Court has an underlying basis for jurisdiction pursuant to 28 U.S.C. § 1332(a) – i.e., diversity jurisdiction. (Doc. 1). Under this provision, federal district courts are statutorily authorized to adjudicate "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between… citizens of different states." *Id*. The parties agree their respective citizenships are diverse – Owners is a citizen of Ohio and Michigan for diversity purposes, while Cosmo's and Bucki are both citizens of Alabama. (Docs. 1, 24, 50, 52, 53). However, Cosmo's argues the complaint fails to establish the requisite amount in controversy. (Doc. 50).

In general, the amount in controversy requirement can be satisfied by "claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). To dismiss a claim for failure to allege the jurisdictional minimum, "[i]t must appear to a legal certainty that the claim is really for less…" *Id*. (citing *Red Cab Co.*, 303 U.S. at 289) (alteration in original). However, for claims based on indeterminate damages, "the *Red Cab Co.* 'legal certainly' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Id*. (citations omitted).

From the outset, the undersigned finds the *Red Cab Co.* test gives way here because Owners' DJA action seeks only declaratory and equitable relief. (Doc. 1). *See*

*SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1248 (S.D. Ala. Nov. 17, 2010) (explaining how actions seeking only declaratory relief necessarily implicate indeterminate damages). In such a case, the amount in controversy "is measured by the value and the object of the litigation" from the plaintiff's perspective. *Ericsson GE Mobile Communs. v. Motorola Communs. & Elecs.*, 120 F.3d 216, 218 (11th Cir. 1997) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 33, 345 (1977)). *See S. Fla. Wellness v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) ("For amount in controversy purposes, the value of… declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective.") (citation omitted)). The parties agree on the relevant standard to be applied here: Owners bears the burden of establishing that its complaint satisfies the jurisdictional minimum amount in controversy by a preponderance of the evidence. (*See* Docs. 50, 52, 53). *McKinnon Motors*, 329 F.3d at 807.

Owners asserts the amount in controversy here is at least the $125,000 sought by Bucki's settlement demand and points to the complaint's various references to that dollar figure in seeking to establish the jurisdictional minimum has been adequately stated. (Doc. 53). Owners posits that "[i]n a declaratory judgment action concerning the applicability of a liability insurance policy to an occurrence, the amount in controversy is judged according to the value of the underlying claim," and explains that it values that underlying claim to be at least $125,000 because Bucki executed the release for this amount and now seeks to enforce the release, as demonstrated by her demand letter. (Doc. 53, PageID.460) (citing *State Farm Fire & Cas. Co. v.*

8

*Knoblett*, 561 F. Supp. 2d 1256, 1257 (N.D. Ala. 2008)).

It is likely Owners could use the $125,000 figure to satisfy the amount in controversy if Bucki brought a suit against Cosmo's implicating indemnity and/or a defense under the Policy, as was the case in *Knoblett*. *Id.* at 1257. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) (holding "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount."). It is also possible this figure could also be used if litigation were imminent. *See Middlebrooks*, 805 F. App'x at 734 (explaining "actions for declaratory judgment on insurance coverage are generally not justiciable until there has been at least a threat of a claim or lawsuit") (citation omitted)). However, "in calculating the amount in controversy, courts may not consider damages sought resulting from unripe causes of action." *Republic Vanguard Ins. Co. v. Russell*, 2021 U.S. Dist. LEXIS 38775, *8 (N.D. Ala. Mar. 2, 2021). *See Sullivan v. Everett Cash Mut. Ins. Co.*, 2023 U.S. App. LEXIS 2762, *10 (11th Cir. Feb. 3, 2023) (per curiam) (endorsing position that "a claim that is not ripe under federal law has a value of zero for amount-in-controversy purposes" and collecting cases). Here, Owners' contention that the amount in controversy is at least $125,000 is based entirely on its assumption that Bucki either has or will be imminently enforcing the release. The undersigned is not so sure.

A similar procedural posture was recently addressed in *Auto-Owners Ins. Co. v. Loveless*, 2023 U.S. Dist. LEXIS 147227 (N.D. Ala. Aug. 22, 2023). There, an insurer brought an action under the DJA seeking a declaration of no duty to defend and/or

9

indemnify, and did so after a demand letter, but before any litigation was pursued or threatened on the underlying claim(s). *Id.* at *7. Relying on binding precedent from the former Fifth Circuit in *American Fidelity & Casualty Co. v. Penn. Threshermen & Farmer's Mut. Casualty Ins. Co.*, 280 F.2d 453 (5th Cir. 1960) and *Allstate Ins. Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir. 1971), the Court reasoned the insurer's claim was not yet ripe because it sought a declaration of the insurer's rights and/or obligations with respect to an underlying claim that had not yet materialized, and indeed, might not. *Id.* at *10-13. In reaching that conclusion, the Court noted there was no underlying claim against the insured, no express threat of litigation (in the demand letter or otherwise) and that any implicit threat of litigation in the demand letter was immaterial because despite that letter setting a firm date for payment, no payment was made, and no action was taken to enforce it.

Just as in *Loveless*, there is no underlying suit here – to date, Bucki has not filed any action in tort against Cosmo's based on the March 28, 2022 incident, nor has she filed any action in contract based on Cosmo's failure to honor the release. Moreover, it not clear whether any such claim will materialize. There has been no express threat of litigation by Bucki, and to the extent her demand letter demonstrates an implicit threat, it has not been acted upon. Indeed, Bucki's demand letter set a date for payment by no later than March 8, 2023, but that was more than nine months ago, and the record indicates no subsequent action on her part to collect.

Further instructive is the Eleventh Circuit's unpublished decision in *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 767 F. App'x 767,

10

770 (11th Cir. 2019) (per curiam). While this case involved a declaratory judgment action initiated after an underlying suit was brought in state court, the panel decision agreed with former Fifth Circuit precedent and the district court's conclusion that "an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established." *Id*. The present case certainly differs in that there is no underlying suit in state court; however, the principle articulated remains valid, as "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *Id*. at 770-71 (citing *Allstate Ins. Co.*, 445 F.2d at 1281). Bucki's suit against Cosmo's may also not come to pass, and if it does not, then the now-hypothetical coverage issues Owners now seeks to litigate will not ripen. This Court should not engage on the hypothetical coverage issues that *could* arise *if* Bucki does so.[4]

Accordingly, the undersigned finds that Owners cannot base its amount in controversy solely on Bucki's settlement demand because whether or not that demand will be enforced remains to be seen and implicates an unripe cause of action. Therefore, the value of her $125,000 hypothetical claim against Cosmo's is $0 for purposes of reaching the jurisdictional minimum. And because Owners hangs it hat

---

4 The undersigned notes, however, that *GTE Directories* acknowledges in dicta the fact "[t]hat the liability may be contingent does not necessarily defeat jurisdiction in a declaratory judgment action," and that engaging on a "hypothetical set of facts" may at times be necessary. 67 F.3d at 1569 (citing 10A Wright & Miller, Fed. Prac. & Proc. § 2757 at 586-87 (2d ed. 1983)). In such a circumstance, the Court should look to "the practical likelihood that the contingencies will occur" to determine whether an actual controversy exists. *Id*. Owners does not argue that Bucki's potential future claim should be viewed as a "practical likelihood," but even if it had, the undersigned again notes the over nine months which have passed since Bucki demanded payment, and her lack of any additional threat of litigation or subsequent action to collect.

on the hypothetical settlement demand as its sole basis for establishing the jurisdictional minimum, and the undersigned concludes said settlement demand is insufficient to establish the jurisdictional amount, Owners has failed to establish this Court's jurisdiction over its complaint.

## III. Conclusion

It should be noted that "subsequent events may be able to ripen a case or controversy for decision." *Middlebrooks*, 805 F. App'x at 734 (citation omitted). And if Bucki brings suit tomorrow against Cosmo's, this case could become ripe for review. But, for jurisdictional purposes, the controversy must exist at the time an action is filed. *GTE Directories*, 67 F.3d at 1568. Not only was this action unripe at the time it was filed, but it remains unripe today. Accordingly, because Owners has failed to properly invoke the jurisdiction of this Court, the undersigned **RECOMMENDS** that Owners' complaint (Doc. 1) be **DISMISSED without prejudice** for lack of subject matter jurisdiction. In accordance with same, it is **RECOMMENDED** that Cosmo's counterclaims (Doc. 24) be **DISMISSED without prejudice**, that Owners' motion to dismiss those counterclaims (Doc. 31) be **DENIED as moot**, and that Owners' motion for sanctions (Doc. 40) be **DENIED**.[5]

---

5 Owners' motion for sanctions under Fed. R. Civ. P. 11 is based on Cosmo's first amended answer and counterclaims – specifically, a contention (alleged to be false by Owners) that it had formally denied Cosmo's claim for coverage. (Doc. 40). According to Owners, this misrepresentation was "the only thing that render[ed] its counterclaim ripe and/or justiciable." (Doc. 40, PageID.275). Although Owners' motion may have some merit, Cosmo's made several arguments in its response which the undersigned finds to be unpersuasive, yet reasonable and not for any improper purpose, especially when considering that Cosmo's counterclaims may have been subject to Fed. R. Civ. P. 13(a). The undersigned declines to further espouse on the merits of said motion at this time in light of the recommendation that the underlying complaint be dismissed for lack of subject matter jurisdiction, and notes the arguments deemed objectionable by Owners would not have arisen but for the improper assertion of subject matter jurisdiction in the first instance.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 18th day of December 2023.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**